DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Attorneys for the Debtor*
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Julie Cvek Curley, Esq.
Erica Feynman Aisner, Esq.

*Hearing Date: April 20, 2016*
*Hearing Time: 3:00 p.m.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

BROOKLYN RENAISSANCE, LLC,

                Debtor.
------------------------------------------------------------X

Chapter 11
Case No. 15-43122 (CEC)

## DEBTOR'S MOTION IN SUPPORT OF APPROVAL OF SETTLEMENT AGREEMENT BETWEEN THE DEBTOR AND HAMILTON VAN BRUNT, LLC PURSUANT TO BANKRUPTCY RULE 9019

**TO:   THE HONORABLE CARLA E. CRAIG,**
       **CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Brooklyn Renaissance, LLC, the above captioned debtor and debtor-in-possession (the "Debtor"), by its undersigned attorneys, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, hereby files this ("Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("FRBP") for approval of the Settlement Agreement (the "Settlement Agreement") by and between, *inter alia,* the Debtor and Hamilton Van Brunt LLC ("Hamilton"), which Settlement Agreement, *inter alia,* effectively resolves all pending disputes between the respective parties, substantially compromises and reduces Hamilton's secured claim in the Chapter 11 case, and permits the sale of the Property (defined below) to the benefit of the estate. In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are §§ 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code") and FRBP Rule 9019.

## BACKGROUND

4. On June 6, 2015, (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5. The Debtor has continued in possession of its property and management of its business affairs as debtor-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

6. No trustee, examiner or statutory committee has been appointed.

7. The Debtor is the holder of both legal and equitable interests in various parcels of real property located in Kings, New York including 300 Van Brunt Street, Brooklyn, New York 11231 ("300 Van Brunt"). 300 Van Brunt is a 3-story mixed use property with a commercial unit on the first floor and two residential units on the floors above. The property is located in the Red Hook section of Brooklyn and is in a severe state of disrepair. It is vacant, boarded up and in need of a complete rehabilitation including repairs to the structure itself.

8. On September 3, 2008, 300 Van Brunt was deeded from Brooklyn Heritage, LLC ("Brooklyn Heritage"), an affiliate of the Debtor, to Annabelle McGown, a minor ("Annabelle") for no consideration. However, this conveyance was subject to the right of the Debtor to purchase the property back from Annabelle for $100,000 (the "Option") which shall be paid in connection with a future sale.

9. A petition for guardianship has been submitted by Annabelle's natural parents James McGown and Amy Hicks. Once an Order from the Kings County Surrogates Court is issued, the appointed guardian (Mr. McGown and/ or Ms. Hicks) intends to convey 300 Van Brunt to the Debtor, pursuant to the Option.

10. On or about September 29, 2015, the Debtor filed a motion seeking entry of: (I) A Sale Procedures Order (A) Approving Bidding Procedures, (B) Approving a Break-Up Fee; (C) Scheduling and Auction and Sale Hearing and (II) Sale Approval Order (A) Authorizing the Sale of Certain of the Debtor's Property Free and Clear of all Liens, Clams, Interests and Encumbrances and (B) Granting Each Successful Bidder Good Faith Status (the "Sale Motion"). The Sale Motion seeks to, among other things, auction off and sell the Property, and on November 18, 2015, this Court granted the Sale Motion. Pursuant to the Sale Motion, the Debtor presently has a Purchase and Sale Agreement with The Other Half LLC for $1,800,000.00 ("Stalking Horse Bid"), which shall be subject to higher and better offers

**Background of Hamilton's Claims Against The Debtor and Debtor's Counter-Claims**

11. In or about October, 2005, Brooklyn Heritage executed a commercial mortgage known as that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated October 24, 2005 ("Mortgage"), made by borrower Brooklyn Heritage, in favor of Park Avenue Bank, and which was given as security for a Secured Promissory Note (the "Note") in the principal sum of $1,200,000.00. The loan to Brooklyn Heritage is further secured by a Mortgage Spreader and Modification Agreement, dated November 17, 2005 ("Spreader Agreement").

12. On or about December 21, 2006, the Mortgage was assigned by The Park Avenue Bank to PAF Capital, LLC ("PAF") pursuant to an Assignment of Mortgage ("PAF Assignment"), which was recorded with the Office of the City Register of the City of New York,

Kings County on February 12, 2007 as CRFN: 2007000081988.

13. On or about October 6, 2014, PAF assigned the Mortgage to Hamilton pursuant to an Assignment of Mortgage ("Fourth Assignment of Mortgage"), which was recorded with the Office of the City Register of the City of New York, Kings County on November 6, 2014 as CRFN: 2014000368096.

14. Hamilton is the present owner and holder of the Note, Mortgage, Spreader Agreement (the "Loan Documents"), and was the holder of the Loan Documents at the commencement of its Foreclosure Action.

15. On or about November 14, 2014, Hamilton Van Brunt LLC ("Hamilton") filed a complaint ("Foreclosure Complaint") in an action to foreclose (the "Foreclosure Action").

16. On July 8, 2015, the Debtor commenced an adversary proceeding (Adv. Pro. No. 15-01086)(the "Adversary Proceeding") in this bankruptcy case by filing a complaint (the "Adversary Complaint") against Hamilton alleging Hamilton was not granted an enforceable right against the Property by virtue the Fourth Assignment of Mortgage. The Adversary Complaint further seeks extinguishment of Hamilton's lien alleging Hamilton is statutorily time barred from enforcing its Mortgage.

17. On or about October 9, 2015, Hamilton moved to dismiss the Adversary Complaint on the grounds that the Debtor lacked prudential standing and therefore failed to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6)(the "Motion to Dismiss"), and the Debtor opposed the Motion to Dismiss.

18. On or about November 24, 2015, the Court, after due deliberation, entered an Order granting the Motion to Dismiss.

19. On January 7, 2016, Hamilton filed a claim in the amount of $3,342,228.54,

secured against 300 Van Brunt, which was assigned Proof of Claim No. 29 (the "Hamilton POC").

20. In an effort to avoid complex, time consuming and costly and litigation concerning, *inter alia*, the Foreclosure Action, and the Hamilton POC, the parties negotiated, through their respective counsel, a settlement and compromise of Hamilton's claims as set forth in the Settlement Agreement.

## THE SETTLEMENT AGREEMENT

21. The Settlement Agreement[1], a copy of which is annexed as **Exhibit "A"**, can be summarized as follows:

   a. The Hamilton POC is hereby allowed as a secured claim against 300 Van Brunt in the Current Chapter 11 Case in the amount of $3,342,228.54 (the "Hamilton Allowed Claim").

   b. Hamilton hereby agrees that the sum of $100,000 (One Hundred Thousand Dollars) may be paid from the proceeds of the sale of 300 Van Brunt to the guardian of Annabelle, as appointed by the Surrogate's Court of the State of New York, County of Kings, in order for the Debtor to exercise the Option.

   c. Hamilton further agrees that the sum of $100,000 may be paid from the proceeds of the sale of 300 Van Brunt to the Debtor. The Debtor shall also be paid at closing a sum equivalent to all transfer tax savings the Debtor might obtain under 1146(a) of the Bankruptcy Code.

   d. Upon either (a) receipt of the net sale proceeds by Hamilton as provided for herein or (b) transfer of the deed as provided for under Paragraphs 15 and 16 below, all other liens, claims, and interests of any kind (collectively, the "Claims") that Hamilton may have heretofore or hereafter asserted against Brooklyn Heritage, Annabelle, Amy Hicks as guardian for Annabelle, James McGown, the Debtor or any of its principals, officers, shareholders, successors and assigns, and the Debtor's estate, including but not limited to the Claims contained in the Hamilton POC, are deemed waived, released, expunged, null and void and of no further force or effect.

   e. The Debtor agrees that it shall have until April 30, 2016 to confirm its Chapter 11 plan of reorganization (the "Plan") with closing of the sale of 300 Van Brunt and

---

[1] Defined terms shall have the meanings set forth in the Settlement Agreement, as applicable.

5

distribution of proceeds in the manner set forth herein no later than thirty (30) days after the entry of an Order confirming the Plan.

f. The Parties agree to hire an auctioneer (the "<u>Auctioneer</u>") to sell the 300 Van Brunt, and in the event the 300 Van Brunt is sold for the price of the Stalking Horse Bid, and the Auctioneer does not receive any higher or better bids, Hamilton shall pay up to the sum of $10,000.00 to the Auctioneer for expenses actually incurred from the closing proceeds. In the event the auction sale of 300 Van Brunt receives bid(s) in an amount higher than the Stalking Horse Bid, any proceeds from the sale in excess of the Stalking Horse Bid and after payment of Expenses and the Buyer's Premium, shall be divided between the Parties with seventy percent (70%) distributed to Hamilton and thirty percent (30%) distributed to the Debtor.

g. If the sale of 300 Van Brunt fails to close with the Other Half LLC or any other higher and better bidders, then the Debtor agrees to deed 300 Van Brunt to Hamilton in lieu of foreclosure for a payment of $200,000.00 ($100,000 to Annabelle and $100,000 to the Debtor) and up to $10,000.00 to the Auctioneer, and the Plan shall provide same.

h. In the event Annabelle is unable to transfer the deed to 300 Van Brunt by the earlier of either (i) April 10, 2016; or (ii) the date by which the Surrogate's Court for State of New York, County of Kings, permits Annabelle to transfer the deed to 300 Van Brunt, the undersigned defendants in the Foreclosure Action shall consent to Judgment of Foreclosure and Sale in the Foreclosure Action and shall in no way oppose Hamilton in the Foreclosure Action or file a further bankruptcy, which shall be memorialized in a separate Stipulation of Forbearance between the parties to the Foreclosure Action to be executed in conjunction with this Stipulation. In the event Annabelle is unable to transfer the deed to 300 Van Brunt, and Hamilton proceeds with its rights and remedies in the Foreclosure Action, then the Debtor shall receive the sum of (i) $150,000 if a foreclosure sale of 300 Van Brunt occurs on or before September 22, 2016; or (iii) $100,000 if a foreclosure sale of 300 Van Brunt occurs on or before February 22, 2017; or (iii) $75,000 if a foreclosure sale of 300 Van Brunt occurs on or before July 22, 2017.

22. The Settlement Agreement therefore permits the Debtor to not only resolve the Hamilton POC, but also recover monies to its estate from 300 Van Brunt, a property otherwise without any equity at this time.

23. Absent the settlement, the Debtor would be mired in continued administratively draining litigation in the Foreclosure Action with no certainty of success. The Debtor's estate would be in jeopardy of zero recovery in the event that Hamilton's entire claim were allowed as

a secured claim and encompass all of the equity in 300 Van Brunt.

24.     The Settlement Agreement gives the Debtor an opportunity to satisfy the Hamilton POC at a huge discount (estimated at 45% of the proof of claim amount) and carve out a distribution for the Debtor's estate. Absent the Settlement Agreement, it is likely that unsecured creditors would receive no distribution from the liquidation and sale of 300 Van Brunt. Accordingly, the Debtor submits that the Settlement Agreement is reasonable and necessary and in the best interests of all creditors.

### REQUEST FOR APPROVAL OF THE SETTLEMENT AGREEMENT PURSUANT TO FRBP RULE 9019

25.     The Debtor submits that approval of the Settlement Agreement is in its best interest since the Settlement Agreement limits Hamilton's recovery on the Hamilton POC from the proceeds of the sale of 300 Van Brunt, and additionally creates a "carve out" to the Debtor's estate.

26.     Absent the settlement, the Hamilton POC would encompass all of the value of 300 Van Brunt and likely wholly eliminate any return to the Debtor's unsecured creditors or equity or, at a minimum, the estate will incur additional risk, cost, time delay and expense of prosecuting the Foreclosure Action and the Debtor's claims against Hamilton.

27.     FRBP Rule 9019(a) permits this Court to approve a compromise or settlement. The Rule provides:

> *(a)*     *Compromise.*  On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

28.     Neither FRBP Rule 9019 nor any section of the Code explicitly sets forth the

standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well established in the case law, focusing upon whether the proposed settlement is reasonable and in the best interests of creditors. *See* Protective Committee v. Anderson, 390 U.S. 414 (1968), *reh'g denied,* 391 U.S. 909 (1968).

29. In deciding whether a proposed compromise is fair and equitable, reasonable and in the best interests of creditors, courts in the Second Circuit follow the analysis first articulated by the Supreme Court in Anderson, as developed and applied by the case law. Thus, courts assess a proposed settlement based upon a consideration of some or all of the following factors:[2]

(i) the relative benefits to be received by creditors under the proposed settlement;

(ii) the likelihood of success in the litigation compared to the present and future benefits offered by the proposed settlement;

(iii) the prospect of complex and protracted litigation if settlement is not approved;

(iv) the attendant expense, inconvenience and delay of litigation;

(v) the probable difficulties of collecting on any judgment that might be obtained;

(vi) the competency and experience of counsel who support the proposed settlement;

---

[2] *See* City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974); In re Ionosphere Clubs, Inc., 156 B.R. 414, 427 (S.D.N.Y. 1993); In re Purified Down Products Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993); In re International Distribution Centers, Inc., 103 B.R 420, 422 (S.D.N.Y. 1989); In re Fugazy, 150 B.R. 103,106 (Bankr. S.D.N.Y. 1993); In re Drexel Burnham Lambert Group, Inc., 134 B.R. 499, 506 (Bankr. S.D.N.Y. 1991); In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 287 (Bankr. S.D.N.Y. 1990); In re Texaco, Inc., 84 B.R.893, 901 (Bankr. S.D.N.Y. 1988); In re Lion Capital Group, Inc., 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); In re Carla Leather, Inc., 44 B.R.457, 466 (Bankr. S.D.N.Y. 1984), *aff'd* 50 B.R. 764 (S.D.N.Y. 1985); In re W.T. Grant Co., 4 B.R. 53,69 (Bankr. S.D.N.Y.). *aff'd,* 20 Bankr. 186 (S.D.N.Y.), *aff'd,* 699 F. 2d 599 (2d Cir. 1983), *cert. denied sub nom.* Cosoff v. Rodman, 464 U.S. 822 (1983). *See also* In re Jackson Brewing Co., 624 F. 2d 599, 602 (5th Cir. 1980).

 (vii) the extent to which the settlement is the product of arm's-length bargaining, and not the product of fraud or collusion;

 (viii) the nature and breadth of any releases to be issued as a result of the proposed settlement; and

 (ix) the paramount interest of the creditors and proper deference to their reasonable views.

30. In evaluating the propriety of a settlement in concert with the foregoing factors, the court need not conduct a trial, "mini-trial," or "a rehearsal of the trial" on the merits to actually resolve the extant factual and legal issues, but must simply consider whether against the background of those issues, the settlement is reasonable. Newman v. Stein, 464 F. 2d 689, 692 (2d Cir. 1972), *cert. denied sub nom.* Benson v. Newman, 409 U.S. 1039 (1972). *See also,* International Distribution,103 B.R. at 423; Drexel Burnham, 134 B.R. at 496. In so doing, the court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See* Anderson, 390 U.S. at 444; Purofied Down Products, 150 B.R. at 519, 524; International Distribution Centers, 103 B.R. at 423.

31. The settlement evaluation process is not designed to substitute the court's judgment for that of a trustee. Carla Leather, 44 B.R. at 465. While the Court is not expected to "rubber stamp" a proposed settlement, the Court should give considerable weight to the informed judgment of the Debtor that the compromise is fair and equitable and the support of the Committee to the settlement, *See* Anderson, 390 U.S. at 444; Ionosphere, 156 B.R. at 426; International Distribution Centers, 103 B.R. at 423; Drexel, 134 B.R. at 496; Carla Leather, 44 B.R. at 472. As articulated by the district court in International Distribution Centers, the Court should give weight to the support not only of the Debtor's counsel but of other counsel to a settlement in determining the wisdom of the compromise. International Distribution Centers,

9

103 B.R. at 423.

32. The Debtor and its counsel have determined that the Settlement Agreement is fair and reasonable for several reasons. First, the Settlement Agreement provides for a substantial savings to the estate by limiting Hamilton's recovery on the Hamilton POC from the proceeds of the sale of 300 Van Brunt. Additionally, the Settlement Agreement provides a "carve out" of the sale proceeds to the Debtor's estate.

33. Furthermore, the Debtor would possibly have to litigate the Foreclosure Action and prosecute its claims against Hamilton therein, which would be extremely risky, costly and further consume funds that could otherwise be available for the estate. Proceeding on the Debtor's claims would not only pose costly financial constraints to the Debtor and its estate, but also pose a risk in the possibility of not succeeding at trial, in which case, all of the costs associated with proceeding with the trial would have provided no benefit to the Debtors' estate and the secured claim would likely be allowed in a significantly higher amount than the value of 300 Van Brunt, thereby creating a significant deficiency claim.

34. The Debtor submits that approval of the Settlement Agreement is in the best interests of the Debtor and its estate since the Settlement Agreement effectively resolves all disputed claims and issues between the parties with respect to the secured claims of Hamilton in the Debtor's bankruptcy proceedings, the Debtor's estate will avoid the costs and time delay that would be associated with further protracted litigation and discovery, and the Debtor believes that the consideration given by both parties in the Settlement Agreement is fair and reasonable.

## NOTICE

35. Notice of this Motion will be provided to (i) Office of the United States Trustee; (ii) parties who have filed notices of appearance; and (iii) all creditors. The Debtor submits that said

notice is adequate and proper.

## CONCLUSION

36. In light of the foregoing, the Debtor respectfully submits that the settlement embodied in the Settlement Agreement falls well above "the lowest point in the range of reasonableness" and is in the best interests of the estate at large and should therefore be approved. Accordingly, the Debtor respectfully requests the Court approve the Settlement Agreement in its entirety.

37. No previous application for the relief herein requested has been made to this or any other Court.

**WHEREFORE,** the Debtor respectfully requests that the Court approve and authorize the Settlement Agreement, together with such other and further relief as is just and proper under the circumstances.

Dated: White Plains, New York
March 1, 2016

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Attorneys for the Debtor*
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
(914) 681-0200

By: */s/ Jonathan S. Pasternak*
Jonathan S. Pasternak